**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SHANNON JONES, 07-0216,**

                                    **Plaintiff,**                **07-CV-0199S(Sr)**

**v.**

**BARRY C. VIRTS, et al.,**

                                    **Defendants.**

---

## REPORT, RECOMMENDATION AND ORDER

            This case was referred to the undersigned by the Hon. William M.

Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and

report upon dispositive motions.  Dkt. #15.


            Plaintiff filed this *pro se* action seeking relief pursuant to 42 U.S.C.

§ 1983.[1]  Dkt. #1.  Plaintiff alleges that while incarcerated at the Wayne County Jail,

Lyons, New York, his rights pursuant to the Eighth and Fourteenth Amendments to the

United States Constitution were violated.  *Id*.  Currently before the Court is defendants'

motion for summary judgment.  Dkt. #21.  For the following reasons, this Court

recommends that defendants' motion for summary judgment be granted in its entirety.

---

[1] Plaintiff Shannon Jones is also known as Dontay Williams.

## BACKGROUND

Plaintiff, proceeding *pro se*, filed this action on or about March 28, 2007, against Barry C. Virts, Eric Carr, David Horton, Edward Kozlowski and John Robson seeking: (1) an order directing defendants Eric Carr, Edward Kozlowski and John Robson to "stay away from the plaintiff so there wont [sic] be anymore assaults, harassments [sic], threats" and $50,000; (2) an order directing defendant Barry Virts to timely investigate matters to protect inmates from "future assaults" and an order directing defendant Virts to conduct daily rounds of the jail (or at least weekly) and $50,000; and, (3) with respect to his claim against defendants Virts and David Horton, an order directing that plaintiff be given access to the law library upon request and "$50,000 each."  Dkt. #1.  Since at least 2000, plaintiff has been incarcerated in various correctional facilities.  Dkt. #20, ¶ 3.  Most recently, plaintiff has been incarcerated at the Wayne County Jail from February 2007 to May 2007, June 2007 to July 2007 and August 2007 to at least July 2008.  *Id*.


### Excessive Use of Force Claim Against Defendants Kozlowski, Carr and Robson

Plaintiff's first claim against defendants Eric Carr, Edward Kozlowski and John Robson alleges that on March 1, 2007, "... [m]y cell was then opened and they came in and started assaulting me while I was still lying in my bed on my stomach. C.O. Carr slammed his knee into my back while punching me in my back and head. C.O.s Robson and Ed Kozlowski continued to assault me by punching me in my head and back also."  Dkt. #1, p.6.  At all times relevant to the allegations in the complaint,

defendants Eric Carr, Edward Kozlowski and John Robson were employed as Corrections Officers at the Wayne County Jail ("WCJ").  Dkt. #20, ¶ 1.

At all times relevant to the allegations of excessive use of force, plaintiff was housed in the Admission Pod ("A-Pod") at WCJ.  Dkt. #20, ¶ 4.  On the morning of March 1, 2007, defendant Kozlowski was assigned the duty of picking up the breakfast trays in A-Pod.  Dkt. #20, ¶ 5; Dkt. #23, ¶ 2.  While defendant Kozlowski was collecting the breakfast trays, plaintiff made a few remarks about defendant Kozlowski having a hard job and plaintiff then began yelling insults and obscenities at defendant Kozlowski. Dkt. #20, ¶ 6; Dkt. #23, ¶ 3.  Thereafter, when defendant Kozlowski asked plaintiff to push his breakfast tray through the opening in his cell, plaintiff refused.  *Id*.  Because of plaintiff's refusal to comply with defendant Kozlowski's request and because plaintiff was yelling insults and obscenities at him, defendant Kozlowski sought assistance from defendants Carr and Robson before entering plaintiff's cell to retrieve the breakfast tray. Dkt. #20, ¶ 7; Dkt. #23, ¶ 3.

When defendants Kozlowski, Carr and Robson returned to plaintiff's cell, plaintiff, who had previously been sitting, immediately stood up and "assumed an aggressive stance."  Dkt. #20, ¶ 8; Dkt. #23, ¶ 4.  In addition, plaintiff began making verbal threats towards defendants Kozlowski, Carr and Robson, including stating that "he was 'going to spit' at us and that he was going to 'pay us a visit on the outside once he was released.'" Dkt. #20, ¶ 9; Dkt. #23, ¶ 4.  Defendant Kozlowski immediately ordered plaintiff to sit down and after a slight hesitation, plaintiff complied.  Dkt. #20,

¶ 10; Dkt. #23, ¶ 5.  According to defendant Kozlowski, while defendants Carr and

Robson remained at or just inside the cell gate, defendant Kozlowski entered plaintiff's

cell and retrieved plaintiff's breakfast tray, a spoon and a cup, without incident.  Dkt.

#20, ¶ 11; Dkt. #23, ¶ 6.  To the extent there was any physical contact, any such

contact was merely to hold plaintiff still so that no one was harmed while the tray was

being removed and to ensure that plaintiff's agitation did not escalate thereby

compromising the safety and security of A-Pod.  Dkt. #22, Exhibit C; Dkt. #25, p.15.

Defendants then left plaintiff's cell and locked the door, at which time, plaintiff resumed

his verbal abuse.  Dkt. #20, ¶ 13; Dkt. #23, ¶ 7.


        On or about March 1, 2007, defendant Carr completed a Special Incident

Report Form detailing the above-described events.  Dkt. #22-2, p.2.  Specifically, on the

Special Incident Report Form, defendant Carr stated:

> At above date and approximate time [3/1/07 approx 0530],
> myself and CO's [sic] Robson and E. Kozlowski entered I/M
> Dontay Williams' cell to secure his breakfast tray and spoon,
> which he refused to push out, and secure his cell gate.  All
> three of us officers responded because of threats and
> aggressive behavior on I/M Williams' part toward CO E.
> Kozlowski while he was collecting the rest of the trays in A-
> Pod.  Upon entering I/M Williams' cell I/M Williams took an
> aggressive stance and again began making verbal threats
> such as threatening to spit at myself and threatening to pay
> myself and CO Kozlowski a visit on the outside when he got
> released.  I/M Williams did, however, sit back down on his
> bunk and allow myself and CO's [sic] Robson and Kozlowski
> to remove his tray, spoon, and cup and lock his gate, which
> we did w/o further incident.

Dkt. #22-2, p.2.

Plaintiff however claims that at no time did he act aggressively towards defendants or refuse any of defendants' orders. Dkt. #28, ¶ 4. In sharp contrast to the sequence of events as recited by defendant Kozlowski and recorded by defendant Carr on the Special Incident Report Form, plaintiff maintains that defendants Kozlowski, Carr and Robson all entered plaintiff's cell and assaulted him. Dkt. #27, p.5. In fact, in opposition to defendants' motion for summary judgment, plaintiff, in his memorandum of law, states,

> Carr slammed his knee into Jones [sic] back while Kozlowski and Robson punched him in his head, neck and back. This went on for a minute or two, then the officers started walking away. Jones was angry and shocked that they had just assaulted him so he replied by telling the officers that they hit like some bitches. At that moment the officers came back and continued to assault Jones.

Dkt. #27, pp.5-6. Later that day, during lunch, plaintiff told other A-Pod inmates that the Corrections Officers "hit him multiple times, using 'excessive force.'" Dkt. #20, ¶ 14. Despite plaintiff's claims that he suffered a lump on his head and back pain, and that he requested "to see medical," there is nothing in the record before this Court to suggest that plaintiff immediately sought medical treatment for any injuries. Dkt. #20, ¶ 15; Dkt. #28, ¶¶ 5-6. In opposition to defendants' motion for summary judgment, plaintiff maintains, without elaboration, that he requested a grievance form, but was advised by an individual, who plaintiff does not identify, that "it wasn't an [sic] grievable issue." Dkt. #27, p.6.

On or about March 4, 2007, plaintiff wrote a letter to defendant Barry Virts setting forth his version of the events that allegedly took place on March 1, 2007. Dkt.

#20, ¶ 18; Dkt. #27, pp.25-26.  At all times relevant to the allegations in the complaint, defendant Virts was the Chief Deputy at WCJ.  Dkt. #22, ¶ 1.  By reason of the severity of the allegations contained in plaintiff's March 4, 2007 letter, defendant Virts instructed Sergeant Frederick Crane to conduct an internal investigation and to interview the plaintiff, the Corrections Officers involved and any witnesses to the alleged incident. Dkt. #20, ¶ 19; Dkt. # 22, ¶ 8.

During the course of the internal investigation, Lieutenant Lester Carr received a letter/written statement from WCJ inmate David Lancaster who resided in A-Pod on March 1, 2007 and who overheard the alleged incident that took place at plaintiff's cell (plaintiff's cell and inmate Lancaster's cell are only two cells apart).  Dkt. #22, ¶ 9.  In his letter, inmate Lancaster indicated that plaintiff had instigated the incident and that although inmate Lancaster could not see what was happening inside plaintiff's cell, he never heard any punches being thrown or any other noises that would have led him to conclude that plaintiff was being assaulted by Corrections Officers. Dkt. #22, ¶ 10.  Moreover, inmate Lancaster stated that he observed plaintiff later that day and that plaintiff did not appear to be injured in any way.  *Id*. at ¶ 11.

Based upon inmate Lancaster's account of the alleged incident on March 1, 2007, as well as discussions with plaintiff and the Corrections Officers involved, Sergeant Crane and defendant Virts concluded that defendants Kozlowski, Carr and Robson had not engaged in any misconduct with respect to the incident alleged to have taken place on March 1, 2007.  Dkt. #22, ¶ 13.  Thereafter, on a Common Form dated

March 12, 2007, plaintiff asked for a copy of the questions he was asked and the answers he provided during the course of the internal investigation. Dkt. #25, p.15.  In response, WCJ stated, "[i]t is <u>our</u> investigation.  You will <u>not</u> receive copies of the investigation or the findings."  *Id*. (emphasis in original).  There was no further communication from plaintiff on this issue.  *Id*.  Notwithstanding plaintiff's familiarity with the grievance process (based on his proper filing of at least ten (10) grievances during the period December 14, 2006 through November 12, 2007), there is no record of any grievance filed by plaintiff in connection with the alleged March 1, 2007 incident.  Dkt. #20, ¶ 22; Dkt. #22, ¶¶ 15-16.

Plaintiff claims in his complaint that he "grieved this claim to Lt Lester Carr who at [sic] time denied it.  I then appealed it to the Chief Deputy who at that time denied it [sic] So I appealed it to Citizen Complaint Review which he didn't sendout [sic] because I never received an [sic] copy of his decision or the receipt.  I also wrote the [sic] Chief Deputy Virts pertaining to my assault."  Dkt. #1, p.7.  Notwithstanding the foregoing, plaintiff claims in his memorandum of law in opposition to defendants' motion for summary judgment that, "[i]n the present case Jones was assaulted by corrections officer [sic] and later on that day he requested an [sic] grievance form and was denied because they said it was not grievable."  Dkt. #27, p.8.  Moreover, also in his memorandum of law, plaintiff claims that the March 4, 2007 letter he sent to defendant Virts satisfies the exhaustion requirement "through informal channels."  *Id*.

**"Failure to Protect" Claim Against Defendant Virts**

As noted above, at all times relevant to the allegations in the complaint, defendant Barry Virts was the Chief Deputy at WCJ.  Dkt. #22, ¶ 1.  Plaintiff's second claim arises, in part, out of the March 1, 2007 alleged incident.  Specifically, in his complaint, plaintiff alleges that he complained numerous times about being threatened and harassed by the Corrections Officers, including the March 1, 2007 alleged incident.  Dkt. #1, pp.8-9.  Moreover, plaintiff alleges that despite his knowledge of the threatening and harassing behavior on the part of the Corrections Officers, defendant Virts refused to act and in so doing "deprived plaintiff of his right to be free from assault by the failure to protect, denial of due process, equal protection, cruel and unusual punishment and malisuos [sic] prosecution ...".  Dkt. #1, p.9.

At no time did defendant Virts fail to respond to any grievance or complaint by plaintiff.  Dkt. #20, ¶ 23; Dkt. #22, ¶ 19.  To the contrary, every time plaintiff brought a complaint concerning his confinement at WCJ to defendant Virts' attention, especially complaints concerning any alleged misconduct on the part of the Corrections Officers, defendant Virts provided plaintiff with the forms and instructions necessary for filing a formal grievance.  Dkt. #20, ¶ 24; Dkt. #22, ¶ 20.  With respect to each grievance filed by plaintiff, the grievance was reviewed, investigated and decided in accordance with the established grievance procedures.  Dkt. #20, ¶ 25; Dkt. #22, ¶ 21.  In addition, defendant Virts never authorized or permitted any WCJ agent or officer to attack and/or threaten plaintiff.  Dkt. #20, ¶ 26; Dkt. #22, ¶ 23.  Moreover, defendant Virts never had any knowledge that plaintiff was subjected to any substantial

risk of serious physical injury.  Dkt. #20, ¶ 26; Dkt. #22, ¶ 23.  Plaintiff did not file a

grievance with respect to the allegations against defendant Virts.  Dkt. #20, ¶ 27; Dkt.

#22, ¶ 24.


**Denial of Access to the Courts Claim**

Plaintiff's third and final claim is that defendant Virts and defendant David

Horton denied plaintiff access to the courts by reason of their failure to allow him

access to the law library and their failure to provide him with requested legal materials.

Dkt. #1, pp.10-11.  Specifically, plaintiff claims that since his most recent incarceration

at WCJ beginning on February 26, 2007, he has submitted numerous requests for legal

materials and that he has not received any of the requested materials.  *Id*.  As a result,

plaintiff claims that he was unable to "fight" the charges pending against him, *to wit*,

"criminal contempt 1 A [sic] felony."  *Id*.  Plaintiff alleges in his complaint that he has

exhausted all of his administrative remedies by "filing communication forms [and]

requesting grievances which [he] wasn't given."  *Id*.


When an inmate at WCJ requests law library materials, including cases,

books and/or permission to use the law library, the inmate must first complete a

"Common Form" setting forth the request.  Dkt. #22, ¶ 28.  The completed Common

Forms are given to defendant Sergeant David Horton who in turn delivers them to

defendant Virts.  Dkt. #22, ¶ 28.  Defendant Virts then turns the completed Common

Forms over to either the County Attorney's Office or the Public Defender who provides the inmate with the requested materials. *Id*.

On or about May 9, 2007, plaintiff submitted a grievance concerning the denial of his May 7, 2007 request to use the law library in advance of a May 10, 2007 court appearance. Dkt. #22-3, p.61. Plaintiff further claimed that he had put in a request to use the law library twice a week for three weeks and had not been permitted to use the law library. *Id*. Moreover, plaintiff stated that since February 26, 2007, despite his weekly requests, he had only been permitted to use the law library three times. *Id*. Finally, plaintiff claimed that he had submitted numerous requests for case cites and he said he had not received one. *Id*. In response, the facility stated, "[a]ll case sites were referred to [sic] County Attorney. When we received the copies, Inmate Williams was given the copies free of charge. Inmate requested law library verbally several times to me and I told him to put it on a Common Form. Inmate Williams/Jones was given law library time every time he requested it in writing." *Id*. A review of all of the Common Forms submitted by plaintiff requesting legal materials, as well as the law library log, reveal that plaintiff was given all of the law library materials he requested and that plaintiff was given access to the law library. Dkt. #22, ¶¶ 30-31; Dkt. #22-3, pp.61-73.

## DISCUSSION AND ANALYSIS

Defendants argue that they are entitled to summary judgment because plaintiff's claims cannot be sustained as a matter of law.  Specifically, with respect to plaintiff's first and second claims, defendants claim that as a threshold matter, plaintiff failed to exhaust his administrative remedies.  Additionally, defendants argue that with respect to plaintiff's first claim, excessive use of force, plaintiff is unable to satisfy both the objective and subjective components of an excessive use of force claim.  With respect to plaintiff's second claim, failure to protect, defendants argue that plaintiff is unable to demonstrate that defendant Virts knew or should have known that plaintiff's safety was in danger and that defendant Virts had a duty to protect plaintiff from that danger.  Finally, with respect to plaintiff's third claim, denial of access to the courts, defendants maintain that the record before the Court is replete with evidence demonstrating that plaintiff was granted access to the law library each time a request was properly made and further, that plaintiff was consistently provided with the legal materials he requested.

## Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while

resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") states:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory[2] and should be applied broadly.  *Id.* at 524.  The *Nussle* Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues.  *Id.* at 524-25. "Even when the prisoner seeks relief not available in grievance proceedings" – such as monetary damages – "exhaustion is a prerequisite to suit."  *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532.

---

[2] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate.  *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

The inmate grievance process in county jails is governed by 9 N.Y.C.R.R. § 7032 *et seq*.  Specifically, the regulations provide that upon admission, each inmate shall be advised in writing of the availability of grievance forms.  9 N.Y.C.R.R. § 7032.4(c).  Such forms shall be made readily available so that an inmate may file a grievance and such grievance must be filed within five days of the act or occurrence giving rise to the grievance.  9 N.Y.C.R.R. § 7032.4(d).  After a grievance is filed, an investigation of the grievance shall be conducted, and shall include gathering and assessing the following, "a description of the facts and issues underlying the circumstances of the grievance; summaries of all interviews held with the grievant and with all parties involved in the grievance; copies of pertinent documents; and any additional relevant information."  9 N.Y.C.R.R. § 7032.4(g).  Certain grievances, including "[g]rievances regarding dispositions or sanctions from disciplinary hearings, administrative segregation housing decisions, issues that are outside the authority of the chief administrative officer to control, or complaints pertaining to an inmate other than the inmate actually filing the grievance" are not grievable and as a result, may be returned to the inmate by the grievance coordinator.  9 N.Y.C.R.R. § 7032.4(h).  If a grievance is found to not be grievable, that grievance may not be appealed.  *Id*.  If however, the issue is found to be grievable, a written determination shall be issued by the grievance coordinator within five business days of receipt of the grievance.  9 N.Y.C.R.R. § 7032.4(I).  Within two business days after receipt of the grievance coordinator's determination, the grievant may appeal the determination to the chief administrative officer.  9 N.Y.C.R.R § 7032.4(j).  A further appeal may be taken within three business days of the receipt of the chief administrative officer's determination to

the State Commission of Correction (Citizens' Policy and Complaint Review Council).  9

N.Y.C.R.R. § 7032.5.


WCJ's inmate grievance procedure fully complies with the regulations set

forth in 9 N.Y.C.R.R. § 7032 *et seq*.  Dkt. #25, p.12.  An inmate who believes he has a

grievable complaint must complete a Common Form requesting a grievance.  Dkt. #25,

p.12.  Once the Common Form is received, an officer speaks with the inmate to

determine whether the issue can be resolved without initiating the grievance process.

*Id*.  If it is determined that the issue cannot be resolved, the inmate is provided a

grievance form.  *Id*.  Once completed, the grievance is delivered to the grievance

coordinator, either Lieutenant Carr or Sergeant Crane, who investigates the matter and

reaches a conclusion.  *Id*. at pp.12-13.  If the inmate disagrees with the conclusion

reached by either Lieutenant Carr or Sergeant Crane, he may then appeal the matter to

Chief Deputy Virts who serves as the Chief Administrative Officer.  *Id*. at p.13.  If still

not satisfied, the inmate may then appeal to the State Commission of Correction's

Citizens' Policy and Complaint Review Council.  *Id*.


In assessing what constitutes exhaustion of administrative remedies, the

Court of Appeals for the Second Circuit determined that:

> a three-part inquiry is appropriate in cases where a prisoner
> plaintiff plausibly seeks to counter defendants' contention
> that the prisoner has failed to exhaust available
> administrative remedies as required by the PLRA, 42 U.S.C.
> § 1997e(a).  Depending on the inmate's explanation for the
> alleged failure to exhaust, the court must ask whether

> administrative remedies were in fact "available" to the
> prisoner.  *Abney v. McGinnis*, 380 F.3d 663 . . . . The Court
> should also inquire as to whether the defendants may have
> forfeited the affirmative defense of non-exhaustion by failing
> to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 . .
> . ., or whether the defendants' own actions inhibiting the
> inmate's exhaustion of remedies may estop one or more of
> the defendants from raising the plaintiff's failure to exhaust
> as a defense, *Ziemba*,[3] 366 F.3d at 163.  If the court finds
> that administrative remedies were available to the plaintiff,
> and that the defendants are not estopped and have not
> forfeited their non-exhaustion defense, but that plaintiff
> nevertheless did not exhaust available remedies, the court
> should consider whether "special circumstances" have been
> plausibly alleged that justify "the prisoner's failure to comply
> with administrative procedural requirements." *Giano v.
> Goord*, 380 F.3d 670. . . .

*Hemphill v. New York,* 380 F.3d 680, 686  (2d Cir. 2004).


There is no dispute that plaintiff is familiar with the grievance process in

place at WCJ.  Dkt. #22, ¶¶ 15-16.  During the period December 14, 2006 through

November 12, 2007, plaintiff properly filed ten grievances.  *Id*. at ¶ 16.  Notwithstanding

plaintiff's claim in his complaint that he "grieved this claim," plaintiff did not file a

grievance with respect to his allegations of excessive use of force on March 1, 2007 or

with respect to his allegations concerning defendant Virts' failure to protect him.  Dkt.

#27, pp.8-10.  The only documentation plaintiff provided in support of both of these

claims was his March 4, 2007 letter to defendant Virts which purported to recount the

events that took place on the morning of March 1, 2007, as well as plaintiff's previous

complaints concerning threats by Corrections Officers.  Dkt. #27, pp.25-26.  Plaintiff

---

[3] *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004).

does not dispute that he did not follow the grievance procedures in place at WCJ.

However, plaintiff claims that his March 4, 2007 letter to defendant Virts constitutes an

informal complaint and thereby, satisfies the exhaustion requirements of the PLRA.

Dkt. #27.  In support of this argument, plaintiff relies on *Marvin v. Goord*, 255 F.3d 40

(2d Cir. 2001).  In *Marvin*, the Second Circuit held that the resolution of a grievance

"through informal channels satisfies the exhaustion requirement, as under the

administrative scheme applicable to New York prisoners, grieving through informal

channels is an available remedy."  *Id*. at 43.  In reaching its decision, the Second Circuit

further explained that plaintiff's "submissions indicate that he succeeded in overturning

the prohibition informally by complaining to various correctional officers."  *Id*. at p.43,

n.3.  Thus, *Marvin* and its progeny "merely stands for the proposition that a grievance

through informal channels satisfies the exhaustion requirement if the prisoner thereby

obtained a favorable resolution of his grievance."  *Thomas v. Cassleberry*, 315

F.Supp.2d 301, 304 (W.D.N.Y. 2004).  Finally, plaintiff attempts to argue that

defendants failed to preserve the affirmative defense of failure to exhaust administrative

remedies.  Dkt. #27, pp.10-11.  Contrary to plaintiff's assertion, defendants did preserve

the affirmative defense of failure to exhaust administrative remedies by pleading it in

their answer.  Dkt. #7.


Thus, in order to succeed in having this Court treat his March 4, 2007

letter to defendant Virts as informally satisfying the exhaustion requirements of the

PLRA, plaintiff must demonstrate that his informal complaint led to a favorable

resolution.   There is nothing in the record before this Court to suggest that plaintiff's informal complaint led to a favorable result.   Accordingly, this Court finds that with respect to plaintiff's first and second claims, excessive use of force and failure to protect, respectively, plaintiff failed to exhaust his administrative remedies and the claims must fail as a matter of law.   As will be discussed in greater detail below, even if plaintiff had exhausted his administrative remedies, plaintiff's failure to protect claim fails as a matter of law on other grounds.

**Failure to Protect Claim**

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989).   Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring.   *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In the instant case, plaintiff claims that he complained numerous times about being threatened and harassed by the Corrections Officers, including the March 1, 2007 alleged incident.  Dkt. #1, pp.8-9.  Moreover, plaintiff alleges that despite his knowledge of the threatening and harassing behavior on the part of the Corrections Officers, defendant Virts refused to act and in so doing "deprived plaintiff of his right to be free from assault by the failure to protect, denial of due process, equal protection, cruel and unusual punishment and malisuos [sic] prosecution ...".  Dkt. #1, p.9.

Contrary to plaintiff's allegations, at no time did defendant Virts fail to respond to any grievance or complaint by plaintiff.  Dkt. #20, ¶ 23; Dkt. #22, ¶ 19.  In fact, every time plaintiff brought a complaint concerning his confinement at WCJ to defendant Virts' attention, especially complaints concerning any alleged misconduct on the part of the Corrections Officers, defendant Virts provided plaintiff with the forms and instructions necessary for filing a formal grievance.  Dkt. #20, ¶ 24; Dkt. #22, ¶ 20. With respect to each grievance filed by plaintiff, the grievance was reviewed, investigated and decided in accordance with established grievance procedures.  Dkt. #20, ¶ 25; Dkt. #22. ¶ 21.  In addition, defendant Virts never authorized or permitted any WCJ agent or officer to attack and/or threaten plaintiff.  Dkt. #20, ¶ 26; Dkt. #22, ¶ 23.  Moreover, defendant Virts never had any knowledge that plaintiff was subjected to any substantial risk of serious physical injury.  Dkt. #20, ¶ 26; Dkt. #22, ¶ 23. Plaintiff's allegations are insufficient to suggest that defendant Virts was personally involved in the March 1, 2007 alleged incident or that defendant Virts' refused to act thereby depriving plaintiff of his right to be free from assault.  Additionally, there is no

evidence in the record before this Court to support the conclusion that defendant Virts had any reason to believe that plaintiff's safety was in any way in jeopardy. Accordingly, in addition to plaintiff's failure to exhaust his administrative remedies with respect to his failure to protect claim, plaintiff cannot establish that defendant Virts was personally involved in the alleged constitutional deprivation.  Therefore, plaintiff's claim for failure to protect fails as a matter of law.


**Denial of Access to the Courts Claim**

Although prisoners retain the constitutional right to meaningful access to the courts, prisoners alleging a violation of this right in the context of a section 1983 action must demonstrate actual harm, e.g., that a "nonfrivolous legal claim had been frustrated or was being impeded."  *Lewis v. Casey*, 518 U.S. 343, 353 (1996) (footnotes omitted); *see Bounds v. Smith*, 430 U.S. 817, 823 (1977).


Here, plaintiff claims that since his most recent incarceration at WCJ beginning on February 26, 2007, he has submitted numerous requests for legal materials and that he has not received any of the requested materials.  Dkt. #1, pp.10-11.  Moreover, plaintiff also claims that despite his requests, he has been unable to use the law library.  *Id*.  As a result, plaintiff alleges that, "I'm here for criminal contempt 1 A [sic] felony for violating an order of protection which it [sic] wasn't in effect at the time but I can't fight it cause [sic] I can't use the library and my attorney doesn't visit me."  *Id*. Plaintiff's allegations, without more, are insufficient to demonstrate that his claim has

been frustrated or impeded as a result of the denial of access to the law library or to legal materials.

As discussed above, there is an established procedure at WCJ for an inmate to request law library materials, including cases, books and/or permission to use the law library.  The inmate must first complete a "Common Form" setting forth the request and the Common Forms are then given to defendant Sergeant David Horton who in turn delivers them to defendant Virts.  Dkt. #22, ¶ 28.  The completed Common Forms are then turned over to either the County Attorney's Office or the Public Defender who provides the inmate with the requested materials.  *Id*.

On or about May 9, 2007, plaintiff submitted a grievance concerning the denial of his May 7, 2007 request to use the law library in advance of a May 10, 2007 court appearance.  Dkt. #22-3, p.62.  Plaintiff further claimed in his grievance that he had put in a request to use the law library twice a week for three weeks and had not been permitted to use the law library.  *Id*.  Moreover, plaintiff stated that since February 26, 2007, despite his weekly requests, he had only been permitted to use the law library three times.  *Id*.  Finally, plaintiff claimed that he had submitted numerous requests for case cites and he said he had not received one.  *Id*.  In response, the facility stated, "[a]ll case sites were referred to County Attorney.  When we received the copies, Inmate Williams was given the copies free of charge.  Inmate requested law library verbally several times to me and I told him to put it on a Common Form.  Inmate Williams/Jones was given law library time every time he requested it in writing."  *Id*.  A

review of all of the Common Forms submitted by plaintiff requesting legal materials, as

well as the law library log, reveal that plaintiff was given all of the law library materials

he requested and that plaintiff was given access to the law library.  Dkt. #22, ¶¶ 30-31;

Dkt. #22-3, pp.61-73.  Thus, because plaintiff was given all of the law library materials

he properly requested as well as access to the law library, and because plaintiff fails to

allege that his ability to pursue a claim was frustrated or impeded, plaintiff's claim for

denial of access to the courts must fail as a matter of law.


## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that defendants' motion

for summary judgment (Dkt. #21) be **GRANTED.**


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


ORDERED, that this Report, Recommendation and Order be filed with the

Clerk of the Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report,

Recommendation and Order to the plaintiff and to the attorney for the defendants.


DATED:      Buffalo, New York
            February 11, 2009


                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**